CHIASSON, Justice Ad Hoc.*
Defendants, Sharon P. McCathern and Daniel F. McCathern, were charged by bill of information on July 11, 1980 with three counts of possession with intent to distribute, a controlled dangerous substance, to wit: cocaine, methaqualone and marijuana, violations of La.R.S. 40:967. On August 19, 1980, defendants filed a Motion to Suppress for use as evidence the drugs seized from them. After a hearing, the trial court granted defendants’ motion on September 3, 1980. This Court has now granted the state’s application to review that judgment.
At the hearing on defendants’ motion to suppress, the following facts were adduced. On June 23, 1980, New Orleans Police Officer Harry O’Neal executed a search warrant at 4217 St. Charles Avenue. At that address the officers seized a quantity of cocaine, methaqualone and marijuana. The officer testified that the search had been conducted pursuant to a warrant that had been secured the day of the search. The officer had also prepared an affidavit in connection with the search warrant. The *747 reasons and facts for the request of the search warrant were listed in the affidavit as follows:
“1. On Monday 6-23-80 at about 5:00 PM Narcotics Officer Harry O’Neal talked with a reliable confidential informant (Cl) whose information in the past has been instrumental in the arrest of narcotics violators. The Cl informed the officer that within 72 hours of talking with him, he had been inside the residence at 4217 St. Charles and while there observed the occupant, DANNY MCKAY, sell amounts of methaqualone (quaaludes) to several people who came to the door. The Cl also informed the officers that MCKAYS apartment was down the alley as you face the building on the right hand side, and the door had a canopy over it. The Cl also overheard a conversation between MCKAY and another subject identified as ALFRED that ALFRED would be over at the residence to cop some quaaludes between 8-8:30 PM. The Cl overheard MCKAY tell the subject ALFRED that it would be $1000 for 500. The Cl then left the apartment and contacted the officer.
“2.A) Based on the Cl’s information, Officer O’Neal, as well as JP Narcotics Agents Mike Kraszb and John Nelson established a surveillance of 4217 St. Charles beginning at about 7:50 PM. At about 8:05 PM the officers observed a white four door Olds, occupied by a white male pull into the driveway at 4217 St. Charles. The officers observed that the subject exited the car, proceeded to the door on the right hand side with a canopy over it and knocked. A few seconds later the occupant opened the door allowing the subject from the Olds to enter. The subject from the Olds was observed to enter the residence empty handed. The license plate of the car was observed to be 421B155, which after checking thru NCIC was learned to be registered to 1964 white Olds, a ALFRED NEITO.
B) At 8:50 PM the officers observed a blue/white Ford Granada, bearing Virginia plates LCT8_pull in front of the Olds, blocking it in. The occupant of the car, observed to be a WF with dark hair carrying a white purse, went to the side door with the canopy over it, knocked and was allowed entry.
C) At 9:05 PM the officers observed a blue/white Ford Mustang II, bearing La. License 740B12— pull in front of the residence a door way down and park. The occupants, observed to be a WM with blonde shoulder length curly hair carrying a red shoulder bag and a WF with dark hair carrying a large dark colored purse. Both subjects went to the side door with the canopy, knocked and be allowed entry.
D) At 9:15 PM the officers observed the WM from the Olds and the WF from the Granada leave the residence and talk a few seconds in front of the Olds. The female then drove off on St. Charles toward Napoleon, and as she walked away from the driver of the Olds, the officers observed that he was now carrying a red and white colored bag, which as the officers watched threw in the back seat. As the subject in the Olds pulled off, the officers observed the occupants of the Mustang leave also, still carrying the large purses.
E) As the Olds left, taking a turn on Gen. Pershing and heading downtown on St. Charles, the officers began to follow the car, with the intent to stop the car and arrest the driver, as based on the Cl’s information and the car registration, the officers felt that the driver of the car was ALFRED and that he had purchased 500 quaaludes. The officers followed the Olds to the 1600 blk. of St. Charles, where by means of the blue light and siren, the officers were successful in pulling over the Olds. As the officers approached the car, and had the driver get out, Off. O’Neal advised the subject that he was under arrest for narcotics and orally advised of his rights. Officer O’Neal asked the driver *748 who he was and the driver replied ALFRED NEITO. Off. O’Neal then looked in the back seat and observed the red and white colored bag and observed that it contained numerous white tablets. Off. O’Neal retrieved the bag and found it to contain approximately 500 quaalude tablets, packaged in 100 tablet lots in clear plastic bags. The arrest of NEITO is reported under item F-25519-80.
“3. Based on the Cl’s information, the officers’ observations and the arrest of NEITO in circumstances outlined by the Cl, it is the affiants belief that contraband controlled dangerous substances are being secreted and sold from within the residence of 4217 St. Charles, the apartment having a doorway on the right hand side of the bldg, with a canopy over it, respectfully request that this warrant be signed.”
At the motion to suppress, Officer O’Neal was questioned about the reliability of the informant. When asked whether information supplied by him had led to any convictions, the witness could only respond that there were presently two defendants in court based on information from this informant. Also the witness testified that the informant had said that he was in the residence of 4217 St. Charles Avenue, and had overheard the alleged drug sale planned for that day.
As recently enunciated by this Court in State v. Wichers, 392 So.2d 419 (La.1980):
“Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S.Const. amend. IV; La.Const. art. 1 § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
‘A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.’ ”
We have held that probable cause exists when the facts and circumstances within the affiant’s knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Richards, 357 So.2d 1128 (La.1978); State v. Smith, 350 So.2d 1178 (La.1977); State v. Williams, 338 So.2d 1365 (La.1976); State v. Sierra, 338 So.2d 609 (La.1976); State v. Hightower, 272 So.2d 363 (La.1973). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Richards, supra; State v. Smith, supra; State v. Williams, supra; State v. Sierra, supra; State v. Holmes, 254 La. 501, 225 So.2d 1 (1969).
In the instant case, the affidavit was based both on information learned from a confidential informant and from the personal observations of the affiant/police officer. Further, the affidavit contains the assertion that information supplied by the defendant in the past has been reliable and has led to the arrest of narcotics violators. This contention of past reliability is based on the decision in State v. Gilbert, 354 So.2d 508 (La.1978) and State v. Smith, supra. Further, this Court has determined that in evaluating an informant’s reliability, “no requirement exists ... that the arrests must have resulted in convictions.” State v. Roach, 322 So.2d 222 (La.1975). Prior convictions is but one means of establishing the reliability of a confidential informant. State v. Tassin, 343 So.2d 681 (La.1976).
The affidavit also contains information establishing the credibility of the informant stating that, less than seventy-two hours before, he had been inside the residence at 4217 St. Charles Avenue, had observed illegal drug transactions, and had overheard a conversation in which a sale *749 was planned the night of the search. Additionally, the affidavit contains a lengthy account of the police observations and corroborations of the informant’s tip, especially in regard to the alleged buyer Alfred. The state thus asserts that since the affiant articulated a basis for the belief that the informant’s tip was both credible and reliable and personally corroborated that information, the affidavit adequately established probable cause to justify the issuing of a warrant.
At the hearing on the motion to suppress, the defendants urged that the portion of the warrant that dealt with the arrest of Alfred Nieto and the search and seizure of the red and white plastic bag should be deleted in ascertaining probable cause. Since the trial judge did not articulate any reasons for granting defendants’ motion, it cannot be determined whether the excision of that portion of the affidavit was its fatal defect.
This matter is quickly resolved in light of our decision this day in the case of State v. Nieto, 395 So.2d 738 (La.1981), wherein we held that the arrest and the seizure were both legal. Since these actions were legal, it was proper to consider these allegations to determine if probable cause existed for issuance of the search warrant. We deem that this information, combined with the information obtained from the informant who was personally inside the dwelling, and the other allegations contained in the affidavit for a search warrant, were sufficient to establish probable cause for the issuance of the search warrant. The trial court erred in holding otherwise.
For the reasons assigned, the ruling of the trial court granting the motion to suppress is reversed and set aside, and the case is remanded to the trial court for proceedings in accordance with the law and in a manner not inconsistent with this opinion.
REVERSED AND REMANDED.

 Judges Covington, Chiasson and Lear of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Associate Justices Calogero, Marcus, Dennis and Blanche.